McHENRY and others v. NEW YORK, P. & O. R. Co. and others.

(*Circuit Court, W. D. Pennsylvania.* August 13, 1885.)

1. REMOVAL OF CAUSE—ENTRY OF ORDER THAT BILL BE TAKEN PRO CONFESSO.
The entry by the prothonotary of the state court, before petition for removal, of an office order that the bill be taken *pro confesso* as against two of several defendants, for want of a formal appearance by paper filed, which order, under the rules, was not absolute, will not prevent a removal of the suit by the defendants.

2. SAME—SERVICE ON ALIENS.
The extraterritorial service of process upon alien defendants, who have not voluntarily appeared, is ineffectual to bring them within the jurisdiction of the court, or make them parties to the suit; and the fact that these persons are named as defendants is no obstacle to its removal.

3. SAME—ALIEN PLAINTIFFS.
Where alien plaintiffs expressly sue as a class for the benefit of the class, all of whom, whether named or not, may avail themselves of the decree, if obtained, a citizen, member of the class, joined with them may be regarded as an unnecessary and formal party, whose joinder does not affect the defendants' right of removal.

4. SAME—ONE OF SEVERAL PLAINTIFFS NOT ENTITLED TO RELIEF.
Where, on the face of the bill, it appears that one of a number of plaintiffs is not entitled to relief, and that the others are the real parties litigant, his presence as a plaintiff will not prevent a removal.

5. SAME—COLLUSION—JURISDICTION.
Upon the facts and circumstances here disclosed, *held*, that the citizen plaintiff in this case had collusively joined with the alien plaintiffs to prevent a removal, and that such device would not defeat the jurisdiction of the circuit court.

In Equity. *Sur* motion on the part of the plaintiffs to remand the cause to the court of common pleas of Crawford county.

*J. B. Brawley, W. R. Bole,* and *C. Heydrick,* for motion.

*W. W. MacFarland, R. P. Ranney, Adams & Russell,* and *John J. Henderson, contra.*

*Coram* McKENNAN and ACHESON, JJ.

ACHESON, J. For the proper understanding of the reasons urged in support of the motion to remand this cause, and the grounds for our conclusions, a brief preliminary statement of facts is necessary. The Atlantic & Great Western Railroad Company, a corporation organized under the laws of the states of New York, Pennsylvania, and Ohio, having made default in the payment of interest on its mortgage bonds, foreclosure suits were commenced in the year 1874, and a receiver of the property of the company was appointed. According to the allegations of the bill of complaint in this case, the total bonded debt of that company at that time amounted to nearly $57,000,000; an enormous sum as compared with the property and means of the company, which was destitute of net earnings. At this juncture, the bondholders and other creditors and the shareholders of the company entered into an agreement, embodied in a plan entitled "Revised Official Scheme of Arrangement," for the organization of a new company, in which the nominal par value and the priorities of exist-

ing securities and shares should be preserved; such new organization to be effected by a sale under the said foreclosure suits of the railroad of the said corporation, with its rolling stock, franchises, etc., and the purchase thereof through reorganization trustees named in the said scheme. The basis of the scheme was that the administration of the company should be brought under the direct supervision of the bondholders, who should have "full control over the expenditure and policy of the company." To this end it was provided that the shares of the reconstructed company should be deposited in trust, and the right to vote thereon be exercised by five trustees elected annually, at a meeting called for the purpose, three to be chosen by a majority in value of the first mortgage bondholders, one by a majority in value of the second mortgage bondholders, and one by a majority in value of the leased line's bondholders; this voting trust to continue until the third mortgage bondholders should receive 7 *per centum* interest in cash during three years, certificates in exchange for and representing the deposited shares, and entitled to dividends when declared, to be issued by the trustees.

In pursuance of this agreement, and for the carrying out of the scheme, the reorganization trustees procured decrees to be entered in the foreclosure suits, and a sale thereunder to be made of the said railroad, etc., and caused a new corporation, called "The New York, Pennsylvania & Ohio Railroad Company," to be created and organized under the laws of the states of Pennsylvania and Ohio, which new company, early in the year 1880, became invested with the said railroad, and the franchises, etc., which had formerly belonged to the Atlantic & Great Western Railroad Company.

The present suit grows out of and has relation to the said reorganization trust; and, so far as the bill concerns matters capable of judicial redress, the substantial ground of complaint therein set forth is that the reorganization trustees have acted and are acting, (as is claimed,) in respect to the issue and disposition of the new mortgage bonds, contrary to and in violation of the terms of the "Revised Official Scheme of Arrangement," and the substantial relief sought is against the trustees.

The plaintiffs, who are four in number, are all aliens, except John Bellangee Cox, who is a citizen of Pennsylvania. The alien plaintiffs are severally holders of certificates given by the reorganization trustees, in exchange for bonds of the Atlantic & Great Western Railroad Company, which entitle them to receive from the trustees a like number of bonds, of the like classes, of the defendant company; and one of the alien plaintiffs, viz., James McHenry, is also the holder of certificates to a very large amount given by the trustees, representing shares of the stock of the old company deposited with the trustees. The plaintiff Cox is the holder of a scrip certificate (by its terms available to bearer) issued by said trustees, representing and given in exchange for 100 shares of the common capital

stock of the Atlantic & Great Western Railroad Company, of the nominal par value of $50 a share, deposited with the trustees.

The defendants are the New York, Pennsylvania & Ohio Railroad Company; Jarvis M. Adams and others, the directors of said company, who are all citizens of New York or Ohio, except George Boyce, who is a citizen of Pennsylvania; and Charles E. Lewis, George Balfour, and J. Lockington Bates, reorganization and voting trustees under said scheme, and H. C. Raikes, a voting trustee, all of whom are aliens.

1. We are asked to remand this suit to the court of common pleas, because, before the filing of the petitions for its removal therefrom, the bill had been taken *pro confesso* as against the New York, Pennsylvania & Ohio Railroad Company and George Boyce, for want of an appearance. Such a *pro confesso* office order, the record shows, was entered by the prothonotary, by the plaintiffs' direction, on July 11, 1885, in default of a formal appearance by paper filed, notwithstanding the railroad company by its counsel had previously, on June 23d, made a motion in the cause, which was granted and entered of record, adjourning the hearing upon a motion for a preliminary injunction until the sixteenth of July. The order of July 11, 1885, however, was against two of the defendants only, and as to them it is not an absolute order, and much less is it a final decree. Equity rules 29 and 30.

There has been no trial of this cause, (*Insurance Co.* v. *Dunn*, 19 Wall. 214; *Hess* v. *Reynolds*, 113 U. S. 73; S. C. 5 Sup. Ct. Rep. 377,) nor anything having the semblance of a trial. All the orders in the state court were made *ex parte* and without notice to the defendants, and they are essentially of an interlocutory nature.

2. The right of removal is denied, because three of the plaintiffs and four of the defendants are aliens and on opposite sides of the controversy. The alien defendants, however, have not been lawfully served with process; nor have they voluntarily appeared. It is, indeed, true that, pursuant to an order of the court of common pleas, claimed to be authorized by the Pennsylvania act of April 6, 1859, (P. L. 387,) process has been served on those defendants in England, where they reside. But, clearly, such extraterritorial service was ineffectual to bring them within the jurisdiction of the court or make them parties to the suit, (*Pennoyer* v. *Neff*, 95 U. S. 714;) and the fact that these persons are named as defendants is no obstacle to a removal of the suit. *Ex parte Girard*, 3 Wall. Jr. 263.

3. It is claimed that this court is without jurisdiction of the suit by reason of the citizenship of John Bellangee Cox. Is this so? It cannot be doubted that there is in this suit a controversy between citizens of a state and foreign citizens, and the question is, does the presence of Cox as a plaintiff prevent a removal? Our conclusion is that it does not, for several reasons.

In the first place, this rule, we think, may be extracted from the

cases that, although one may be a proper party, yet, if he is not an indispensable party, he may be treated as a nominal or formal party, and therefore as not standing in the way of a removal. *Edgerton* v. *Gilpin*, 3 Woods, 277; *Barney* v. *Latham*, 103 U. S. 214; *Bacon* v. *Rives*, 106 U. S. 99; S. C. 1 Sup. Ct. Rep. 3. Now, in this case, the plaintiffs, as they have the right to do, (Story, Eq. Pl. § 97,) sue as *a class* for the benefit of a class, all of whom, whether named as plaintiffs or not, may avail themselves of the benefit of the decree, if obtained. The bill expressly declares that the "plaintiffs bring this action as well for the benefit of all holders of such certificates who may see fit to avail themselves hereof as for themselves." In view, then, of the character of the suit, it is plain that Cox is not an indispensable party, for his joinder was wholly unnecessary, and the suit can proceed as well without as with him; and hence he may well be considered as a formal und unnecessary party, whose joinder does not affect the jurisdiction of the court. *Edgerton* v. *Gilpin, supra; Deford* v. *Mehaffy*, 14 Fed. Rep. 181.

In the second place, we are of opinion that upon the face of the bill John Bellangee Cox is not entitled to any relief, and has no right to maintain the suit. His assumption that he has a right to call for the issue directly to him of 100 shares of the defendant company's stock is altogether unwarranted. What he is entitled to is a new certificate to be issued to him by the trustees agreeably to clause 7 of the "scheme of arrangement," and this it does not appear he has ever asked for. It is a fundamental provision of the reorganization scheme that the expenditure, policy, and general administration of the reorganized company shall be controlled by the bondholders by the exercise of the voting power inherent in the stock, through the agency of voting trustees, to be chosen by the bondholders in the manner prescribed by the seventh clause of the scheme and already mentioned in this opinion. To effectuate this purpose and secure the other contemplated objects, the tenth clause of the "schedules" invests the reorganization trustees with the largest discretionary powers, which, we think, are quite sufficient to justify the disposition and use that has been made of the stock of the new company. It comes, therefore, to this: that the substantial controversy disclosed by the bill relates to the trust for the bondholders, and touches their rights *inter se* and the duties of the trustees to the complaining bondholders, and we do not see that Cox has any footing upon which to stand with the latter as a plaintiff here.

In cases arising under the removal statutes, it is always allowable to look into the record and see what the subject-matter of the controversy really is, and, discarding mere appearances, ascertain who are the actual litigants. *Wood* v. *Davis*, 18 How. 467; *Barney* v. *Latham, supra.*

Finally, the evidence before us, we think, justifies the charge made in one of the petitions for removal that Cox became a party plaintiff

collusively, and for the mere purpose of defeating a removal. The bill, which, however, is not verified by oath or affirmation, does, indeed, allege that Cox was the owner of 100 shares of the common stock of the Atlantic & Great Western Railroad Company. But, in his affidavit filed in this court, he does not pretend that he ever was a stockholder in that company, and he now simply claims to be the holder of a scrip certificate (a copy of which he attaches to his affidavit) issued by the reorganization trustees. That certificate does not purport to have been issued to Cox. He is, it seems, the brother-in-law of James McHenry, the principal plaintiff and promoter of this suit. In his affidavit, to meet the charge of collusion, it was incumbent on him to state when he became the holder of this certificate; but upon this point he preserves a condemning silence, contenting himself with saying that "for a long time" prior to the filing of this bill he was a *"bona fide* shareholder of the defendant company." It is evident from the bill itself and otherwise that his scrip certificate is worthless, and never had any pecuniary value. Whatever Cox's rights may be, they are distinct and separate from those of the other plaintiffs, and, as we have seen, he has no interest in the trust for the bondholders, which, undoubtedly, is the substantial subject-matter of the bill. Under all the circumstances, then, we feel quite justified in regarding the joinder of Cox as a plaintiff as one of those "devices" to destroy the right of parties to remove their causes into the federal courts which Mr. Justice MILLER, in *Arapahoe Co.* v. *Kansas Pac. Ry. Co.*, 4 Dill. 283, so pointedly condemned.

4. The fourth reason assigned in support of the motion to remand is founded upon a misapprehension. The petitions for removal *were* presented to the president judge of the common pleas court, who approved the bonds, but declined making any further order.

5. Touching the fifth reason, we need only say that all the defendants over whom the court had jurisdiction did join in one of the removal petitions.

The motion to remand the suit must be denied; and it is so ordered.